IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

Case No. 4:25-CV-00066-M

| | | |
|---|---|---|
| JOHN LATHAM,<br><br>Plaintiff,<br><br>v.<br><br>FRANK J. BISIGNANO,<br>*Commissioner of Social Security*,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | ORDER |

This matter comes before the court on the Memorandum and Recommendation ("M&R") issued by United States Magistrate Judge Robert B. Jones, Jr. [DE 11]. Judge Jones recommends that this court deny Plaintiff's requested relief [DE 1] and affirm the final decision of the Commissioner [DE 5]. Plaintiff filed objections to the M&R [DE 12] and Defendant did not respond. After a *de novo* review of the Plaintiff's objections, the court finds that the ALJ made none of the errors reported by Plaintiff. Thus, the court overrules the Plaintiff's objections, adopts the rationale of the M&R, and affirms the Commissioner's final decision.

## I. Standards of Review

A magistrate judge's recommendation carries no presumptive weight. *Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023). The court "may accept, reject, or modify, in whole or in part, the . . . recommendation[ ] . . . receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1); *accord Mathews v. Weber*, 423 U.S. 261, 271 (1976). The court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1). Without timely objection, *de novo* review is unnecessary, and a district court need only check for clear error

on the face of the record to accept the magistrate judge's recommendation. *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing 28 U.S.C. § 636(b)(1)).

A reviewing court must uphold a Social Security disability determination if "(1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020). The "substantial evidence" required is more than "a mere scintilla . . . but may be less than a preponderance." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). While not "reflexively rubber-stamp[ing] the ALJ's findings," a court reviewing for substantial evidence cannot "re-weigh conflicting evidence, make credibility determinations, or substitute its judgment" for the ALJ's. *Arakas*, 983 F.3d at 95. Instead, the scope of review is limited to ensuring that the ALJ "'buil[t] an accurate and logical bridge' from the evidence to their conclusion." *Id.*; *see also Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997) (discussing that a court's review focuses on whether the ALJ analyzed the relevant evidence and sufficiently explained his findings and rationale in crediting the evidence).

Under § 636(b)(1), the claimant's objections to the M&R must be "specific and particularized" to facilitate district court review. *United States v. Midgette,* 478 F.3d 616, 621 (4th Cir. 2007). On the other hand, "general and conclusory objections that do not direct the court to a specific error" in the M&R fall short of this standard. *See Stokes v. Berryhill*, 294 F. Supp. 3d 460, 462 (E.D.N.C. 2018) (quoting *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982)).

## II. Analysis

Plaintiff challenges the Commissioner's decision affirming Administrative Law Judge ("ALJ") David Shea's denial of Plaintiff's application for social security disability benefits, arguing that the ALJ erred in failing to adequately account for Plaintiff's moderate mental

limitations in maintaining concentration, persistence, or pace ("CPP") in the Residual Functional Capacity ("RFC") assessment. DE 7. Defendant counters that the ALJ, based on an individualized and evidenced-based assessment of a claimant's specific function at step three of the sequential evaluation, can either include a limitation in the RFC assessment to account for moderate limitations in maintaining CPP when warranted or indicate when such a limitation in the RFC is unnecessary. Def.'s Brief, DE 9. Defendant further argues that the ALJ's discussion of the medical evidence, medical opinions, prior administrative findings, and Plaintiff's statements provides a sufficient explanation for the ALJ's decision not to add a limitation in the RFC to account for the moderate mental limitation. *Id.* In reply, Plaintiff states that the ALJ expanded the social interaction requirement in the RFC assessment beyond the scope recommended by state agency consultants without explaining why the deviation was justified or supported by substantial evidence. Pl.'s Reply Brief, DE 10.

The matter was referred to Magistrate Judge Jones for a recommendation pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Judge Jones concludes that "the ALJ did not ignore claimant's moderate limitation in the functional area of concentration, persistence, or pace, but rather discussed the relevant evidence and imposed appropriate limitations in the RFC to account for [Plaintiff's] deficits in this area." M&R, DE 11 at 8. Judge Jones further asserts that the "ALJ's limitation to 'frequent' interactions with supervisors, coworkers, and the public is not … a critical deviation from the state agency opinions requiring remand." *Id.* at 10. Thus, Judge Jones recommends that this court affirm the Commissioner's final decision. *Id.* at 11.

Plaintiff does not lodge objections to the M&R's "Statement of the Case," "Standard of Review," "Disability Evaluation Process," and "ALJ'S Findings" sections. The court finds no clear error with those sections on the face of the record and, therefore, adopts and incorporates by

reference those portions of the M&R as if fully set forth herein. Plaintiff objects to portions of Judge Jones's analysis, arguing that the magistrate judge erred in concluding that the ALJ adequately accounted for Latham's moderate CPP limitations in the RFC assessment, misjudged in finding the ALJ's limitation to "frequent" social interaction was not a critical deviation from the state agency opinions, and improperly supplied post-hoc rationale for the ALJ's decision. Pl.'s objection, DE 12 at 4, 10, and 12.

As this court's review of such purported errors is *de novo*, the court will "uphold a Social Security disability determination if (1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." *Arakas*, 983 F.3d at 94 (citations omitted). The standard applied to the substantial-evidence inquiry is a deferential one, limited to whether the ALJ "'buil[t] an accurate and logical bridge' from the evidence to [his] conclusion." *Id.* at 95 (citations omitted); *see also Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) ("In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner].") (citation omitted).

A. <u>RFC Assessment</u>

Plaintiff contends that the M&R improperly affirmed the RFC assessment as adequately accounting for his moderate CPP limitations. An RFC assessment is critical in determining a claimant's ability to do past relevant work and other work in the broader economy pursuant to "steps 4 and 5 of the sequential evaluation process in 20 CFR 404.1520 and 416.920." *See* SSR 96-8p. The RFC must "identify the pertinent evidence from medical and nonmedical reports and … make findings as to the individual's ability to perform work-related activities." *See* SSR 85-

16. This includes "all limits on work-related activities resulting from [a] mental impairment." *See* SSR 85-16.

When a claimant's limitations are due to mental impairments, an ALJ must follow a special analysis to: "(1) Identify the need for additional evidence to determine impairment severity; (2) Consider and evaluate functional consequences of the mental disorder(s) relevant to [the claimant's] ability to work; and (3) Organize and present [his or her] findings in a clear, concise, and consistent manner." *See* 20 C.F.R. § 404.1520a. Four broad domains exist in which a claimant's degree of mental impairment is rated, including the claimant's ability to "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *See* 20 C.F.R. § 404.1520a. The claimant's degree of limitation due to the mental impairment is on "the following five-point scale: [n]one, mild, moderate, marked, and extreme." *See* 20 C.F.R. § 404.1520a. In step 5 of the evaluation process, the ALJ must account for any limitations on work-related mental activities including "the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *See* SSR 96-8p.

Courts have provided specific guidance to help ALJs adequately account for CPP limitations in the RFC. For example, "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). However, an ALJ can find that a moderate CPP limitation does not affect the claimant's ability to work and, therefore, refrain from imposing a work limitation in the RFC assessment. In doing so, the ALJ must provide an

explanation that is "sufficiently explained and supported by substantial evidence in the record." *Shinaberry v. Saul*, 952 F.3d 113, 122 (4th Cir. 2020).

Here, the ALJ listed the following work limitations in the Plaintiff's RFC assessment: "understand and remember simple instructions; frequent interactions with supervisors, coworkers and the public; carry out simple instructions; and deal with occasional changes in a routine work setting." *See* R. 21. Further, the ALJ discussed Plaintiff's mental health treatment records that span from September 2021 to December 2023. In his discussion, the ALJ noted that the Plaintiff had multiple mental status examinations that were "within normal limits" and that "persuasive" state agency mental health assessments indicated that "Claimant's mental issues have gotten better over time with treatment." *See* R. 22-24.

1. *RFC Mental Limitation Standard Unmet under Mascio*

Plaintiff objects that the M&R erred in determining that the ALJ's work limitation of "simple instructions" in the RFC assessment properly accounted for his moderate CPP limitation and "by treating the existence of *any* mental limitation in the RFC finding as sufficient to satisfy *Mascio*." DE 12 at 5 (emphasis in original). The *Mascio* court, in concluding that the sole work limitation of "simple instructions" is insufficient to account for a moderate CPP limitation, explicitly stated that "the ability to perform simple tasks differs from the ability to stay on task." *See Mascio*, 780 F.3d at 638. However, the court also stated that a moderate CPP limitation need not necessarily "translate into [imposing] a [work] limitation" in the RFC, so long as the ALJ provides an explanation for its omission. *Id.*

Judge Jones addressed the same argument Plaintiff raises in his objection before this court and concluded that the ALJ provided a sufficient explanation for the work limitations that were imposed to account for Plaintiff's moderate CPP limitation. First, Judge Jones found that the "ALJ

not only limited Claimant to understanding, remembering, and carrying out simple instructions, but also limited Claimant's social interactions, as well as changes in the work setting," which were addressed in the hypothetical to the vocational expert. DE 11 at 7. Further, Judge Jones referenced the ALJ's discussion of Plaintiff's mental health treatment records and "noted that [the] claimant's mental status examinations were generally unremarkable." DE 11 at 7. Also, Judge Jones noted that the ALJ found the state agency reviewer's assessments to be a "persuasive" indication that Plaintiff's mental issues had improved over time. In demonstrating that these assessments corresponded with the medical evidence, Judge Jones pointed to a March 7, 2024, consultative physical exam, which shows that "Claimant's mental status was normal, and anxiety and depression were not indicated in the systems review." DE 11 at 7.

Plaintiff's objection appears to be directed at Judge Jones' finding that "a [work] limitation may be relevant to more than one area, and this court has previously found that limitations on social interactions and changes in the work setting do account for moderate difficulties in concentration and persistence." DE 11 at 8. Plaintiff contends that Judge Jones' reliance on three unpublished decisions for his conclusion is error because the decisions are "unpersuasive." DE 12 at 6. The court disagrees and finds that these courts sufficiently explain how limitations on social interaction and changes in a work setting account for moderate CPP limitations. DE 12 at 6. For example, in *Ford*, the court explained that hypothetical questions posed to the vocational expert that are not restricted to simple tasks and that include limitations for "constant change," "no loud noises," and "low production occupation" account for CPP limitations by addressing "Plaintiff's ability to stay on task." *Ford v. Colvin*, No. 4:14-CV-79-D, 2015 WL 5008962, at *3 (E.D.N.C. Aug. 19, 2015). In addition, the *Dixon* court references the *Ford* and *Linares* courts, both of which employ the same reasoning, to support its conclusion that the ALJ properly accounted for

claimant's moderate CPP limitations with limitations to "constant changes or dealing with crisis situations, and only occasional contact with coworkers and the general public." *Dixon v. Colvin*, No. 4:14-CV-228-FL, 2016 WL 520293, at *7 (E.D.N.C. Jan. 21, 2016), *report and recommendation adopted*, No. 4:14-CV-228-FL, 2016 WL 538460 (E.D.N.C. Feb. 9, 2016); *Linares v. Colvin*, No. 5:14-CV-00120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015). Furthermore, the relevant regulation itself states that an ALJ's RFC assessment in step 5 of the evaluation process "must" account for *any* mental limitations by methods which may include limits on claimant's ability to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *See* SSR 96-8p. Hence, Plaintiff fails to show the M&R erred by relying on work limitations in social interaction and work setting changes to account for CPP limitations.

2. *RFC Analysis Excludes Logical Explanation*

An RFC analysis "has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). The three components are equally important for completion and potential review of an RFC analysis. *See Thomas*, 916 F.3d at 311.

Judge Jones addressed Plaintiff's argument that the ALJ did not provide a logical explanation for why CPP limitations do not need to be accounted for in the RFC beyond a limitation to simple instructions. As previously stated, Judge Jones relied on more than the "simple instructions" limitation, explaining that "a limitation may be relevant to more than one area, and this court has previously found that limitations on social interactions and changes in work setting do account for moderate difficulties in concentration and persistence." DE 11 at 8.

Plaintiff objects that the ALJ "never explained how the RFC finding accounts for these documented difficulties," referencing "difficulty sustaining attention, avoiding tasks, and abandoning projects." DE 12 at 7. Plaintiff's assertion contradicts the record.

First, the ALJ states that while the Plaintiff has a moderate CPP limitation, "he can pay bills, handle a savings account, count change, and use a checkbook/money orders." *See* R. 20. To support this point, the ALJ referenced the Plaintiff's statements in December 2022, clarifying that "he keeps up with house maintenance and stays occupied." *See* R. 23. Plaintiff also stated that he read "often and well," handled credit cards, and paid bills, which the ALJ references in his decision. *See* R. 20, R. 237-238. In addition, the ALJ referenced what Plaintiff's wife said regarding Plaintiff's daily reading and weekly video game engagement. *See* R. 20. Plaintiff's wife further advised that the Plaintiff followed instructions "pretty well" and could pay attention for "30 minutes to an hour [depending] on what's going on." *See* R. 247. She also stated that Plaintiff "[did] fine" with authority figures and had never been fired for issues related to getting along with others, but "avoid[ed] interactions [when] he [could]." *See* R. 248. Pursuant to 20 C.F.R. §§ 404.1520c and 416.920c, these third-party statements can be used as a nonmedical source to support CPP findings, even if the ALJ does not state how persuasive he finds the source to be.

Furthermore, the ALJ's explanation is supplemented with reference to "persuasive" state agency assessments that point toward improvement in mental issues, even during a move in which Plaintiff maintained a "stable" depressed mood and only experienced anxiety due to the move. *See* R. 24. More specifically, the ALJ references the mental RFC exams that Dr. Mullins and Dr. Hanspal conducted. The subsequent reports both explicitly state that Claimant is "capable of understanding and remembering at least simple work-related instructions." *See* R. 65 and R. 77.

This medical evidence supports the ALJ's decision to put in place the limitation of "simple instructions" in the RFC assessment, which, based on the hypothetical to the vocational expert, meant that Plaintiff could carry out "full time work in the national economy." *See* R. 57-58. It should also be noted that Dr. Mullins, Dr. Hanspal, and other medical professionals indicated "normal" findings when they performed mental status examinations on the Plaintiff.

In sum, the court finds no error with this logical explanation and finds that the ALJ provided "a [clear] window into [his] reasoning" to enable potential appellate review. *See Thomas*, 916 F.3d at 313. By referencing medical examinations, Plaintiff's statements, and third-party statements, the ALJ sufficiently explained why Plaintiff's moderate CPP limitations do not equate to an inability to follow simple instructions and a consequent inability to work. Hence, the court overrules Plaintiff's objections to the M&R's treatment of the ALJ's accounting of moderate CPP limitations in the RFC assessment.

B. State Agency Opinions

Plaintiff argues that the magistrate judge was wrong in ruling that the ALJ's limitation to "frequent" social interaction with supervisors was not a crucial shift from the state agency opinions that the ALJ described as persuasive. DE 12 at 9. However, "ALJs are not required to accept all components of a witness' discussion about a claimant's limitations just because the ALJ finds them to be generally persuasive." *Turner v. Comm'r of Soc. Sec.*, No. 23-1760, 2024 WL 2764722, at *5 (4th Cir. May 30, 2024). In fact, ALJs shall "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." *See* 20 C.F.R. § 404.1520c. On review, an ALJ is required only to "provide 'a narrative discussion describing how the evidence supports each conclusion.'" *See Thomas*, 916 F.3d at 311.

In this case, the ALJ adopted work limitations in the RFC assessment for frequent interactions with supervisors, coworkers, and the public. *See* R. 21. These limitations were informed by state agency mental assessments from Dr. Mullins and Dr. Brooks (Exs. 2A and 4A), information that the Plaintiff provided to his medical providers, mental status examinations, and information from the Plaintiff's wife. Judge Jones addressed Plaintiff's concerns regarding the ALJ's incorporation of Dr. Mullins's and Dr. Brooks's mental assessments in his analysis, stating that the ALJ is "not required to adopt these opinions in full even where he found them to be persuasive." DE 11 at 10.

Plaintiff objects that the ALJ and the M&R both do not account for the RFC's contradiction with a "core recommendation" in the state agency opinions that Plaintiff would do well in environments with "limited social interactions" and "minimal social demands." DE 12 at 10 (citing R. 66 and R.78). The court finds no error. Again, the ALJ does not have to adopt all components of a persuasive witness' recommendations. In addition, the ALJ provided sufficient explanation for the work limitations he imposed for Plaintiff to have "frequent interactions" with supervisors. *See* R. 21. According to the ALJ, this limitation was based on record indication that "claimant's mental issues have gotten better over time with treatment." *See* R. 24. The record indicates that in December 2023, Plaintiff stated to medical providers that his depressed mood was stable and that he planned to begin group therapy. *See* R. 561. Plaintiff also had an unremarkable mental status examination at this medical visit. *See* R. 563.

Furthermore, the ALJ's adoption of substantial portions of the state agency opinions rebuts Plaintiff's assertion that the ALJ's limiting instructions were "a movement in the opposite direction" from the agency opinions. DE 12 at 10. For example, the ALJ's simple work-related instructions in the RFC align with Dr. Mullins's assessment, which found that Plaintiff is "capable

of understanding and remembering at least some simple work-related instructions." *See* R. 65. In addition, Dr. Mullins's ratings on Plaintiff's abilities in social interaction indicate that Plaintiff is not significantly limited in asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them; and maintaining socially appropriate behavior. *See* R. 66. The only moderate limitation that Dr. Mullins noted was in Plaintiff's ability to appropriately interact with "the general public." *See* R. 66. Dr. Brooks' ratings in the Plaintiff's social interaction abilities are similar, with the only difference being that Dr. Brooks rates Plaintiff as moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors. *See* R. 78. Hence, Dr. Mullins's and Dr. Brooks's assessments regarding social interaction are largely aligned with the ALJ's limitation to frequent interactions in the workplace environment.

The court acknowledges that Dr. Brooks's assessment notes that Plaintiff would do best in an environment with limited social demands. *See* R. 78. However, this is not inconsistent with the ALJ's limitation to a work environment with frequent social interaction. Frequent interaction in the workplace does not necessarily require a high social demand within a set work environment. This is particularly notable here as both Dr. Mullins and Dr. Brooks note that the Plaintiff can adapt to routine changes in the work environment. *See* R. 66 and 78.

In conclusion, the ALJ's recommendations are not only "explained and supported by substantial evidence in the record," they are also supported by most of the state agency doctors' specific recommendations. *See Shinaberry*, 952 F.3d at 122. Hence, the court finds no error with ALJ's social interaction limitations and overrules Plaintiff's objections concerning the M&R's treatment of ALJ's RFC interpretation.

C. Post-Hoc Rationale

Plaintiff contends that the M&R improperly provides post-hoc rationale for the ALJ's decision. DE 12 at 13. When a court reviews administrative action, "a judicial judgment cannot be made to do service for an administrative judgment." *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 94 (1943). This means that "a reviewing court cannot fill in the blanks" regarding the reasoning that justifies an administrator's actions. *See Roye v. Bisignano,* No. 1:24-CV-2296-MSN-WBP, 2026 WL 821813, at *8 (E.D. Va. Mar. 25, 2026).

In the second footnote of his M&R, Judge Jones states that the ALJ's imposition of "a limitation for changes in the work setting . . . functions as a limit on stress in the work environment." DE 11 at 9. Judge Jones appears to clarify his assertion that the ALJ instilled a limitation on changes in work environment that aligns with the opinions prepared by Dr. Mullins and Dr. Brooks with regards to how the Plaintiff can sustain attention to carry out simple tasks "in a low stress work environment." *See* R. 65-67 and R. 77-78. The core of the Plaintiff's contention is that that the ALJ did not make such connection between a limitation to "occasional changes in a routine work setting" and a "low stress work environment." DE 12 at 12-13.

The court is not persuaded. The ALJ "refer[ed] expressly to [the] evidence" from the persuasive opinions of state examiners, medical records, and third-party claims in his decision. *Woods v. Berryhill*, 888 F.3d 686, 693 (4th Cir. 2018). This is unlike *Woods,* in which the ALJ failed to explicitly state that a heavily weighted physician's expert evidence led him to give little weight to the North Carolina Department of Health and Human Services' (NCDHHS) decision to grant the claimant Medicaid on disability grounds. *See id.* at 690. More specifically, the ALJ's "generic" and "[un]specific" explanation in *Woods* for not giving much weight to the NCDHHS determination relied on the independent and distinct nature of the Medicaid and Social Security Administration (SSA) disability determinations. *See Id.* at 693. In contrast, the ALJ here explicitly

references the evidence that underlies his interpretation of the expert opinions, unlike the ALJ in *Woods* who did not reference the persuasive expert opinion that was made available "a number of years" after the NCDHHS disability determination and which subsequently served as the basis for the low weight that was accorded to the Medicaid determination. *See Id.* at 693. Here, Judge Jones solely draws an inference regarding how the ALJ's limits to changes in the work environment could have been instilled to limit anxiety inducing stress. This inference is "cumulative of evidence existing in the record [that was explicitly] considered by the ALJ" in the RFC assessment. *Belton v. Colvin*, No. 1:14CV777, 2015 WL 5023087, at *10 (M.D.N.C. Aug. 24, 2015), *report and recommendation adopted*, No. 1:14CV777, 2015 WL 5712732 (M.D.N.C. Sept. 29, 2015). Hence, the magistrate judge's inferential analysis does not function as prohibited post-hoc gap filling.

In conclusion, Judge Jones's second footnote does not qualify as the type of gap-filling measure that cannot be utilized in review of Social Security administrative decisions.

## III. Conclusion

This court's review of the ALJ's decision is confined to whether substantial evidence in the record, as it was reviewed by the ALJ, supports his decision and whether he applied correct legal standards. *See Shinaberry*, 952 F.3d at 120. Even if other evidence exists that may support Plaintiff's position, the court is not permitted to reweigh the evidence or to substitute its own judgment for that of the ALJ. *See Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). In considering the entire record, and the evidence referenced herein, the court finds that Magistrate Judge Jones correctly found that the ALJ supported his RFC determination with substantial evidence and properly weighed the relevant state agency opinions.

Having reviewed Plaintiff's objections, portions of the M&R for clear error (as described

*supra*), and the remainder of the record *de novo*, the court: (1) ADOPTS the M&R [DE 11]; and (2) AFFIRMS the decision of the Commissioner of the Social Security Administration. The Clerk of Court is DIRECTED to enter judgment in favor of Defendant, forward a copy of this order to Plaintiff and all counsel of record, and close this case.

SO ORDERED this 28th day of September, 2026.

Richard E Myers II

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE